IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
01 SEP -4 PM 3: 19
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| EDITH FUQUA )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CRAVEN CROWELL, in his official )<br>capacity as Chairman of the TVA Board of )<br>Directors; SKILA HARRIS, in her official )<br>capacity as a member of the TVA Board of )<br>Directors; and GLENN McCULLOUGH, )<br>JR., in his official capacity as a member of )<br>the TVA Board of Directors )<br>)<br>Defendants. ) | CASE NO. CV-00-B-2205-NE<br><br>ENTERED<br>SEP 4 2001 |

## MEMORANDUM OPINION

This action is before the court on the Motion for Summary Judgment[1] filed by defendants Craven Crowell, Skila Harris, and Glenn McCullough in their official capacities as members of the Tennessee Valley Authority Board of Directors ("defendants" or "TVA"). Plaintiff Edith Fuqua ("plaintiff" or "Fuqua") filed this action for declaratory judgment, equitable relief, and money damages alleging that defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). Plaintiff seeks to enforce a Final Agency Decision ("FAD") issued by TVA's Equal Opportunity Compliance ("EOC") Director, finding that plaintiff was discriminated against when she was not selected for a Clerk, SB-4, position in August 1996. Upon consideration of the record, the submissions of the parties, the arguments of

---

[1] Subject matter jurisdiction is more appropriately addressed in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).



counsel, and the relevant law, the court is of the opinion that defendant's Motion is due to be granted.

## I. FACTUAL SUMMARY

Plaintiff was hired by TVA in March 1978, and resigned her employment effective September 4, 1996. (Moss Decl. at ¶¶ 4-5, Ex. B.)[2] In June 1996, plaintiff was employed as a Clerk, SB-4, in the Design Engineering department at TVA's Browns Ferry Nuclear Plant ("Browns Ferry"). (Moss Decl. at ¶ 4.) In 1996, TVA Nuclear reorganized the Engineering Departments at its three nuclear plants, including Browns Ferry. (Moss Decl. at ¶ 2.) Before the reorganization, each plant had a Systems Engineering Department and a Design Engineering Department. (Moss Decl. at ¶ 2.) The reorganization sought to combine the functions of both these departments into one new department called Site Engineering. (Moss Decl. at ¶ 2.) As a result of the combination of the Systems Engineering Department and Design Engineering Deaprtment, a new Clerk, SB-4, position was created. (Moss Decl. at ¶ 3.) At Browns Ferry, the new Clerk, SB-4, position was posted as a vacant position, and the Clerks working in the existing Systems Engineering Department and Design Engineering Department were invited to apply for the new position. (Moss Decl. at ¶ 3.)

Plaintiff submitted her application for one of the new Clerk, SB-4, positions on August 5, 1996. (Talley Decl. at Ex. 5.) On August 25, 1996, she learned that she had not been selected

---

[2] On January 9, 2001, defendant filed the declaration of Steven D. Moss with attached exhibits. References to this declaration will be cited as ("Moss Decl.") and references to the attached exhibits will be cited as ("Moss Decl. at Ex.") and the corresponding lettered exhibit. On January 9, 2001, defendant filed the declaration of Lynn P. Talley with attached exhibits. References to this declaration will be cited as ("Talley Decl.") and references to the attached exhibits will be cited as ("Talley Decl. at Ex.") and the corresponding exhibit number. On April 30, 2001, defendant filed the second declaration of Lynn P. Talley with attached exhibits.

2

for the position. (Complaint at ¶ 16.) On August 30, 1996, plaintiff was notified that her current Clerk, SB-4, position was no longer needed at Browns Ferry. (Moss Decl. at ¶ 4, Ex. A.) At that time, plaintiff was given three options: (1) exercise her reassignment rights and accept an available Clerk, SB-3, position at Browns Ferry, (2) resign her TVA employment and receive one year's salary, severance pay, and eligible retirement benefits, or (3) accept assignment to the TVA Services organization for a period of one year, during which she would continue to earn her salary and be provided the opportunity to seek other employment. (Moss Decl. at ¶ 4, Ex. A.)

On September 4, 1996, plaintiff chose to voluntarily resign her TVA employment, effective that day. (Moss Decl. at ¶ 5, Ex. B.) In resigning her TVA employment, plaintiff signed TVA's FY 1997 Employee Resignation Option Form which stated as follows:

> I understand the terms of this voluntary resignation option as set forth in the August 30 letter assigning me to TVA Services. I also understand that if I do not resign I will have a job opportunity, absent a power system emergency, at TVA during fiscal year 1997. After considering my options, I voluntarily choose to resign in order to receive the benefits listed [on the resignation form].

(Moss Decl. at Ex. B.) As a result of her voluntary resignation, plaintiff received severance pay in the amount of $9,444.80; a lump-sum payment of one year's salary amounting to $28,890; and a lump-sum payment for accumulated but unused annual leave amounting to $2,090.36. (Moss Decl. at ¶ 6.)

On August 28, 1996, prior to the effective date of plaintiff's voluntary resignation, she contacted a TVA Equal Opportunity ("EO") counselor with concerns regarding her nonselection. (Talley Decl. at ¶ 2, Ex. 1.) Plaintiff alleged that she was discriminated against because of her race (African-American) when she was not selected for the new Clerk, SB-4, position. (Talley Decl. at Ex. 1.) As reflected in the precomplaint counseling report, the sole relief plaintiff

3

requested was "[t]o be placed in the position she applied for or a similar position of equal grade and salary." (Talley Decl. at ¶ 2, Ex. 1 at Bates No. 0007.) Plaintiff filed a formal complaint of discrimination on October 25, 1996, after precomplaint counseling did not resolve the matter. (Talley Decl. at ¶ 3, Ex. 2.) In her complaint, plaintiff again alleged that she was discriminated against on the basis of race when she was not selected for the Clerk, SB-4, position. (Talley Decl. at Ex. 2 at Bates No. 0005.) Plaintiff made no mention of compensatory damages in her complaint, nor any facts which would indicate that she had suffered physical or mental injury as a result of the alleged actions. (Talley Decl. at Ex. 2.)

On November 1, 1996, the EOC Director accepted the claim set forth in plaintiff's formal complaint for investigation. (Talley Decl. ¶ 4, Ex. 3.) On May 19, 2000, the EOC Director issued a FAD, finding on behalf of plaintiff and ordering that certain remedial actions be taken. (Talley Decl. at ¶ 7, Ex. 7.) The FAD ordered TVA to offer plaintiff the same or substantially equivalent position as the one for which she was not selected for in August 1996, award plaintiff backpay, interest, and benefits, pay reasonable attorney's fees and costs, and take steps to ensure no acts of reprisal or harassment were taken against plaintiff. (Talley Decl. at Ex. 7 at 7-8.) On June 5, 2000, TVA offered to reinstate Ms. Fuqua in a Clerk, SB-4, position and stated it was in the process of computing the amount of backpay due plaintiff. (PX 18.)[3] In compliance with the FAD plaintiff was reinstated at Browns Ferry in a Clerk, SB-4, position on July 31, 2000. (Moss Decl. at ¶ 7.) On June 20, 2000, TVA sent plaintiff a letter requesting that she submit an

---

[3] On March 5, 2001, plaintiff filed Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment with attached exhibits. References to this evidence will be cited as ("PX") followed by the corresponding exhibit number.

affidavit stating her outside earnings. (PX 19.) On June 23, 2000, plaintiff wrote to TVA asking for payroll paperwork of those chosen for the Clerk, SB-4, position since August 1996. (PX 20.) On June 28, 2000, TVA submitted a memorandum to Clarence Williams stating that TVA was unable to make the backpay calculations because plaintiff had not yet submitted her backpay affidavit. (PX 21.) On June 30, 2000, and July 7, 2000, plaintiff submitted letters to TVA regarding plaintiff's efforts to mitigate her backpay and again, requested the comparator information. (PX 22.) On August 3, 2000, plaintiff's counsel received a computation of plaintiff's backpay for the previous four years. (PX 24.)[4] On August 4, 2000, plaintiff's attorney wrote TVA's representative stating that plaintiff would submit her own backpay calculation "using a slightly different formula." (PX 25.)

On August 8, 2000, plaintiff filed this instant civil action. (Complaint at ¶ 12.) Plaintiff never petitioned the EOC for enforcement of the FAD, prior to filing this action. (Talley Decl. at ¶ 8.) On September 12, 2000, plaintiff's counsel submitted a letter to the EOC, which was ultimately treated as a petition for enforcement. (Talley Decl. ¶ 8, Ex. 8.) In the letter plaintiff stated that she filed this action in federal court because TVA was not going to give her compensatory damages in their backpay calculation. (Talley Decl. at Ex. 8.) In the letter plaintiff also asserted that TVA's decision not to award her backpay if she pursued this action in federal court constituted reprisal. (Talley Decl. at Ex. 8.) The TVA denied the petition because TVA maintains that her claims arise out of and are part of plaintiff's claims that are the subject of this lawsuit. (Talley Decl. at Ex. 9.)

---

[4] Plaintiff's Adjusted Gross Back Pay Plus Interest was $111,187.83. (PX 24.)

5

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III.  DISCUSSION

Plaintiff, through this action, effectively seeks to have the court enforce the FAD. (Compl. at ¶ 26.) Federal employees are required to exhaust the administrative process before proceeding to federal court. *See Brown v. GSA,* 425 U.S. 820, 829-32 (1976) (A federal employee must timely exhaust administrative remedies before filing an employment

discrimination suit under Title VII.). The EEO regulations for federal sector discrimination complaints explicitly provide that:

> If the complainant believes that the agency has failed to comply with the terms of a settlement agreement or decision, the complainant **shall** notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance. The complainant may request that the terms of settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased. (Emphasis added.)

29 C.F.R. § 1614.504(a). After being notified of the alleged noncompliance, the agency must respond to the complainant:

> If the agency has not responded to the complainant, in writing, or if the complainant is not satisfied with the agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination as to whether the agency has complied with the terms of the settlement agreement or decision. The complainant may file such an appeal 35 days after he or she has served the agency with the allegations of noncompliance, but must file an appeal within 30 days of his or her receipt of an agency's determination.

*Id.* at 1614.504(b).

The Fifth Circuit applied 29 C.F.R. § 1614.504 in a similar case. In *Sanders v. Reno,* 186 F.3d 684, 685 (5th Cir. 1999), plaintiff claimed that he was discriminated against based on age and in retaliation for protected activity, when he was not selected for a lateral transfer. The Department of Justice issued a FAD in favor of plaintiff, finding that his employer, the Immigration and Naturalization Service, had unlawfully discriminated against him. *See id.* Before the FAD was implemented plaintiff filed suit demanding that the Department of Justice comply with the FAD issued in his favor. *See id.* The court found that plaintiff had failed to satisfy the requirements of 29 C.F.R. § 1614.504(a). *See id.* The Fifth Circuit held that because plaintiff had failed to exhaust his administrative remedies seeking enforcement of the FAD, the

court lacked subject matter jurisdiction. *See id.* Therefore, the Fifth Circuit affirmed the district court's dismissal of the action for lack of subject matter jurisdiction. *See id.* [5]

Plaintiff contends that she has exhausted all her administrative remedies. (Pl.'s Brief at 12.) Plaintiff asserts that she expected TVA to continue to implement the FAD, but that she was required to file this action within the 90-day timeline to assert her compensatory damages claim. (Pl.'s Brief at 12.) Plaintiff's compensatory damages claims arise from the same conduct addressed in the FAD. Plaintiff's efforts to expand the corrective actions awarded in the FAD or to assert a new claim for compensatory damages in this action do not excuse her from first exhausting her administrative remedies.

Plaintiff also contends that 29 C.F.R. § 1614.504 does not apply where a party is already in litigation. (Pl.'s Brief at 13.) Plaintiff states that "the plain language of [29 C.F.R. § 1614.504] clarifies that it only applies [to] 'final action that has not been the subject of an appeal or civil action . . . .'" (Pl.'s Brief at 13.) Specifically, plaintiff asserts that because section 1614.504 exempts actions filed in court exhaustion is not required. (Pl.'s Brief at 13.) The court disagrees with plaintiff's contention. Section 1614.504(a) binds the agency to its final action

---

[5] If plaintiff wished to bring an action regarding defendants' alleged noncompliance with the FAD, plaintiff was first required to use the administrative process by notifying TVA's EOC of the alleged noncompliance and requesting enforcement of the FAD. Only after pursuing this avenue of relief could plaintiff proceed to federal court on issues raised in the enforcement petition. *Sanders,* 186 F.3d at 685. Plaintiff also contends that *Sanders* is distinguishable from her case because in *Sanders* the court rejected plaintiff's argument that a letter sent to his employer constituted substantial compliance because it was not addressed to the EEO Director, failed to allege noncompliance, and did not seek compensatory damages. (Pl.'s Brief at 16.) The issue in *Sanders* was whether an employee of the federal government could proceed in federal court against his employer to enforce a FAD before exhausting his administrative remedies. *Sanders,* 186 F.3d at 685. Although plaintiff's argument is different than the plaintiff's argument in *Sanders* the issue to be decided is the same.

8

unless the complainant appeals that action at the administrative level or files suit in federal court, it does not exempt a complainant from exhausting her administrative remedies before filing suit in federal court.

Finally, plaintiff contends that "the FAD expressly states that [plaintiff] has the right to file a civil action in an appropriate U.S. District Court 'WITHIN 90 CALENDER DAYS of your receipt of this letter.'" (Pl.'s Brief at 13.) Plaintiff is correct; after exhausting her administrative remedies she may bring suit in federal court. Plaintiff's right to file an action in federal court would have suffered no prejudice by petitioning the EEO for enforcement of the FAD.

Plaintiff has chosen her forum for this dispute, but it cannot be properly adjudicated here because she has failed to exhaust her administrative remedies with regard to enforcement of the FAD or her claim for compensatory damages. Plaintiff's letter to TVA's EOC on September 12, five weeks after filing this lawsuit, cannot be considered an appropriate petition for enforcement. (Talley Decl. at Ex. 8.) Most significantly, it was not submitted to TVA's Director of EOC until after this civil action was filed. Because this court lacks jurisdiction over this matter it cannot address plaintiff's additional arguments or the portion of defendants' motion asking that the court rule that the FAD is not binding on defendants and that plaintiff is not entitled to backpay.

IV. CONCLUSION

For the foregoing reasons, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 4th day of September, 2001.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge